Oliver S. McPherson v. John A. Davis et al.

[48 South. 625.]

Deeds of Trust. *Foreclosure by sale. Irregularities. Purchasers'
    failure to pay bid. Resale. Sale under junior deed. Resale
    Vacating sales. Equity. Costs.*

Where by agreement between the beneficiaries land subject to two
    deeds of trust was to be sold under both on the same day and at
    the same place, and the beneficiary in the junior deed was the
    highest bidder at the auction under the first one but refused to
    pay the full amount of his bid, tendering only the amount due
    on the first deed, and the trustee declined to make him a deed;
    and the land was then sold under the junior deed and purchased
    by the beneficiary therein for an inadequate consideration and a
    trustee's deed executed to him thereunder; but later in the day,
    after the bidders had dispersed, the trustee in the first deed made
    a second sale thereunder to a bidder having notice of all the
    facts:

(*a*) The first attempt to sell under the first deed was of no validity
    because not consummated; and

(*b*) The second sale, made under the second deed, should be va-
    cated because the beneficiary knew all the facts and caused all
    the trouble and was the purchaser thereunder for an inadequate
    consideration; and

(*c*) The third sale, the re-sale under the first deed, was invalid
    because the purchaser had notice of all the facts and, under the
    circumstances, it could only have been made after re-advertise-
    ment; and

(*d*) The chancery court, at the suit of the beneficiary in the second
    deed, should vacate all the sales, ascertain the sum due on each
    of the deeds of trust and sell the land to satisfy the same accord-
    ing to priority; and

(*e*) If the highest bidder at the pretended re-sale under the first
    deed had paid his bid an accounting should be had and he should
    be subrogated to the rights of the beneficiary who received his
    money, and should have refunded to him any part of his bid
    remaining in the hands of the trustee; and

(*f*) The costs of the suit should be taxed against the beneficiary
    in the second deed, who caused all the trouble.

From the chancery court of Attala County.
Hon. James F. McCool, Chancellor.

McPherson, appellant, was complainant in the court below; Davis and others, appellees, were defendants there. From a decree in defendant's favor complainant appealed to the supreme court. The facts are fully stated in the opinion of the court.

*S. L. Dodd* and *May, Flowers & Whitfield,* for appellant.

In the first place, we say that the court below erred in sustaining the demurrer to the amended bill.

The facts as set out in the bill appear to be so complicated, and present grounds for so many different possible views to be adopted by the court that it was plainly impossible for the complainant to plant himself upon any particular set of facts and ask the court for that relief only which in his judgment should be given him. It was his duty to state all the facts in order that the court might, for itself, determine to which relief he was entitled. If, under the facts charged, he was entitled to any relief whatsoever then the demurrer should have been overruled.

Keeping in mind that no fraud was intended by any party to the transaction we find the facts to be as set out in the bill that Davis, trustee, did cry off this land under his first lien and this appellant, O. S. McPherson, bid therefor the sum of $1510. The bidder offered to pay then and there whatever was necessary to satisfy the senior lien and to pay all the costs of the foreclosure. It was understood and well known by all the parties interested that McPherson held the second lien and that the excess of his bid over the amount necessary to satisfy the debt secured by the first lien and the costs of the foreclosure would go to him, and be credited on the indebtedness of Johnson to him. There was no necessity for the actual handling in cash of this excess; there was no necessity for McPherson to pay this money into the hands of the trustee in order that it might at once be handed back to him. This excess would have been credited upon the claim of the holder of the junior lien. The trustee should have accepted the amount necessary to pay the debt due

the Kelly Banking Company and the costs of the foreclosure and should have made McPherson a deed. The said purchaser would then have been compelled to credit his claim by amount of the excess. To hold that this was the duty of the trustee under the circumstances it is not necessary to believe that the trustee desired to practice any fraud upon anybody. In fact we are considering the allegations of the bill with the charges of fraud eliminated. The trustee was evidently mistaken in his duties at this juncture; he doubtless thought as trustee he would be best protected by collecting the cash and then redelivering it. This does not alter the case, however. There is no reason, as far as the allegations of this bill show, why he should not have collected the purchase price in this way. It may be that there are reasons which he had before him at that time, but if there are such reasons they should be furnished in an answer. Certainly these facts cannot be admitted and the complainant at the same time denied any relief. It is usual for the payment of the purchase price to be made in this manner when the successful bidder is the holder of the next lien. It is the business way to do it. The trustee represents the owners of the property as well as the beneficiary. To credit the indebtedness of the owner of land by the amount of the excess in cash to them. Especially in the case at bar was this the proper way to adjust it. There had been an agreement between the parties to sell at the same time under both instruments. There was nothing wrong in such an agreement, but it was made in the hope that thereby the property could be made to bring its full value. The best bidder at a foreclosure sale is nearly always the holder of the second lien. He is trying to protect his rights and make the property bring enough to pay his debts, too. All the complainant is asking here is that he be permitted to purchase for $1,510 and that he have the deed to the land. It is difficult to see why this should be objected to by any of the defendants except Lowenberg. He bought for $1,000 and got a deed. As far as Mrs. Johnson and her daughter are concerned no reason shall be conjectured why they

should not prefer this course. They would have something over $750 of their indebtedness to McPherson paid thereby and at the same time would have their indebtedness to the Kelly Banking Company paid and all costs of the foreclosure. The court will observe that the deed of trust to McPherson and Mc-Neill embraces certain personal property consisting of horses, about seventeen in number. These are liable for the balance due on the McPherson indebtedness. Mrs. Johnson and her daughter were therefore interested in having the indebtedness to McPherson & McNeill reduced as much as possible.

If the Kelly Banking Company had been the purchaser it would not have been necessary to put the cash into the hands of the trustee.

Crediting the note of the mortgagor would have been the same as the payment of the cash. *Jacobs v. Turpin,* 83 Ill. 424; *Beal v. Blairi,* 33 Iowa, 318; *Mead v. McLaughlin,* 42 Mo. 198.

And again after Davis, the trustee, refused to make appellant a deed, McPherson then offered to pay the amount to the Kelly Banking Company together with the costs of the foreclosure in extinguishment of the lien held by the said Kelly Banking Company. He ascertained the amount and tendered it in gold and yet the trustee would not accept it, but afterwards proceeded to make another sale. It is charged that Lowenberg, the purchaser who did get a deed knew about this offer to pay the debt and the tender of the money. This would have disposed of the first lien and strengthened McPherson's security, raising his to the rank of senior. But Davis refused to accept his money. Assuming that he had no fraudulent intent the fact remains that he failed to do what the law required him to do. The failure to do this avoids the sale afterwards made to Lowenberg and if the court should hold that McPherson is not entitled to a deed, certainly this sale should be set aside and the land sold under the decree of this court.

"No valid sale can be made under a mortgage or trust deed

after the debt secured has been paid, or after a sufficient tender of the whole amount due." 13 Cyc. 1452.

And again, in order to strengthen his right to a deed to the. said land, the said McPherson bid it in at the sale under the junior trust deed for the sum of $10. He understood this to be a purchase subject to a prior lien if he did not have a deed under the foreclosure of such prior deed. He therefore has a deed to the land made by the substituted trustee in the second instrument and the right to a deed from the trustee under the first mortgage. This too, without any regard to whether the transaction was fraudulent. If the first sale was a valid one then he is entitled to a deed from the trustee under that sale. If he got no title under that sale then the sale to Lowenberg is void, because the trust deed had been, in the eyes of a court of equity, satisfied by the tender of the amount due under it intervening the first sale and the sale to Lowenberg. If he is not entitled to a deed from Davis and the sale to Lowenberg is void, then McPherson has a title to the property under the sale by Dodd, trustee in the second mortgage.

"If the purchaser under a power of sale, fearing that the sale was irregular, causes the land to be resold, and again buys it in, such second sale does not estop him from asserting the validity of the first sale." Jones on Mortgages (6th ed.), § 1902.

But if McPherson was entitled to no relief based upon the facts set out in the preceding paragraphs, it certainly cannot be denied that he is at least entitled to the excess of Lowenberg's bid over the amount necessary to satisfy the first mortgage. Under no view of the case can he be denied this much. He held the second lien.

*Mayes & Longstreet,* for appellees.

1. It is not shown that any consideration whatever moved to the Kelly Banking Company, for the so-called agreement to sell under both trust deeds at the same time—an agreement (or rather, an undertaking, apparently) which McPherson himself

failed to carry out, in failing to have his trustee present at the time for the sale.

2. Neither the debtor, Johnson (who was in fact then dead), nor Davis, the trustee, was a party to this agreement or understanding. Davis was notified of it after it was made; and he did advertise for sale at the time he was instructed. This far, the Kelly Banking Company clearly had a right to call on him (as to the time of sale). But what he should do as salesman and trustee when the sale was made was another thing entirely; and as to that he was to be guided by the provisions of the trust deed, exclusively.

3. When it appeared that Dodd, the substituted trustee for McPherson, could not attend because of his personal engagment in court, he could have asked any other person as well as Davis to represent him, or McPherson could have substituted another trustee to take Dodd's place (that is, provided he had power to appoint a substituted trustee at all). But this he did not do. The bill makes no averment whatever even tending to show that he did not have ample opportunity to do this. Failing so to do, he himself failed to carry out his so-called agreement, on which he now relies.

4. When Davis was requested by Dodd to act as his substitute and cry the sale under the second trust deed as well as the first, he expressly refused to do so. And he was clearly right in refusing to assume a position so delicate and doubtful. The bill neither avers that Davis gave no reason for his refusal, nor sets that reason forth. It is wholly silent on that point.

5. The bill shows that notwithstanding the absence of Dodd, and notwithstanding Davis' refusal to act in Dodd's place, and notwithstanding his own failure to appoint any substitute for Dodd, McPherson attended the sale under the first trust deed, made by Davis, and bought in the land, without any objection or protest, or any effort to carry out his side of the so-called agreement.

In short, notwithstanding Davis' express refusal to act as

McPherson's trustee, the effort was to dispense with the second mortgage sale, and yet make Davis take the risk and responsibility of collecting by his own proper sale, McPherson's money on his second trust deed.

Davis' position and his action were clearly correct. It is well settled that the trustee in a trust deed is not the agent only of the creditor; but he is a trustee, also, for the debtor. It is his duty to care for both. 28 Am. & Eng. Ency. Laws, 765.

Davis was right in standing by the terms of his trust deed. McPherson was still not without his remedy. Even after paying over the money to Davis, if there was any equity in his favor, he could have protected himself by an injunction restraining Davis from paying over the balance. And Davis and the widow and child were entitled that such course should be taken. The trustee, in such case, would have conformed exactly to the deed, and the fund would be in *custodia legis* for determination of the true right to it.

MAYES, J., delivered the opinion of the court.

The substantial averments of the bill of complaint filed in this cause, in so far as they affect a decision in the case, are: In 1905, on the 11th day of March, W. J. Johnson executed to the C. C. Kelly Banking Company a deed in trust to cover an indebtedness of about $500. The trust deed was given on a certain tract of land then owned by Johnson, and J. A. Davis was made the trustee therein. Later in the same year, to wit, on the 26th day of June, Johnson gave a second deed in trust on the same property to the firm of McPherson & McNeill to cover an indebtedness of $2,500. One T. A. Massey was named as trustee in this second deed in trust. Later McPherson & McNeill transferred this deed in trust to O. S. McPherson, and S. L. Dodd was appointed as substituted trustee therein in place of Massey. Both deeds in trust are admitted to be valid liens on the property in controversy, and having priority in the order named. W. J. Johnson died on the 28th of April, 1906.

Neither of the mortgages being paid at maturity, by oral agreement between the holder of the senior and junior mortgages, a sale was advertised by both trustees to take place on the same day, to wit, the 14th day of September, 1906; the holder of the junior mortgage not desiring to purchase the debt of the senior mortgagee and obtain an assignment of same. On the 14th day of September the trustee under the first deed in trust, Davis, duly appeared for the purpose of making sale under his trust deed in accordance with the advertisement to that effect; but S. L. Dodd, substituted trustee in the junior mortgage, being then engaged in the trial of a cause in court and unable to be on hand, requested Davis to make sale under both deeds in trust, but Davis declined to act for the trustee in the junior mortgage in any way. In pursuance of the advertisement made by him, and acting for the senior mortgagee, Davis proceeded to sell, and McPherson, the holder of the junior mortgage, bid in the property at $1,510. After bidding in the property McPherson declined to pay the full amount of his bid to the trustee, but claimed the right to pay over only such sum as would fully satisfy the first mortgage and retain the overplus to be credited on his own mortgage, and tendered only so much of the amount bid as was sufficient to satisfy the first mortgage. Davis declined to allow this to be done, whereupon S. L. Dodd, trustee in the second mortgage, proceeded to make a sale under the second deed in trust, and McPherson again bid in the property, this time for the sum of $10. In short, McPherson was the only bidder at both sales, and Dodd, trustee in the junior mortgage, executed a deed to McPherson of the property in question under the sale under the second mortgage. After all of the above transactions, and after the refusal of McPherson to pay the full amount of his bid, Davis, trustee in the first mortgage, undertook to make a resale of the property, which he did late in the afternoon, after all bidders had dispersed, and at this third sale one Lowenberg, with full knowledge of all the facts, bid in the property for the sum of $1,000, and a deed was made to him by Davis of the property in question.

The bill contains many charges of fraud; but we do not deem it necessary to take notice of these charges, since the settlement of this case must turn upon other features. The bill concludes with a prayer for the cancellation of the deed made by Davis to Lowenberg, and that, upon full satisfaction of the first deed in trust by complainant, the deed made to complainant by S. L. Dodd, trustee in the second mortgage, be declared the true title to the property. The bill further prays for an accounting from J. A. Davis, trustee, for all sums of money that have come into his hands over and above a sufficient sum to pay and satisfy the first mortgage. After this prayer the bill then prays that, if complainant is mistaken in the relief prayed for, then that the court appoint a commissioner to take an account of the sum due on both deeds in trust, and the property ordered to be sold for the purpose of paying same in order of priority. There are other features of the prayer, but it is not necessary to set out same. An answer was filed by defendants, denying all fraud, and at the same time interposing a demurrer to the bill. The chief issues raisd by the demurrer are: (1) That there is no equity shown in the bill; (2) that the prayer of the bill is vague and uncertain, subject to much repetition, uncertainty, and prolixity. The chancellor sustained the demurrer and dismissed the bill.

As to last ground of demurrer there is much force in the contention; but we do not think that a dismissal of the bill can be justified on this account. It seems to have been the object of complainant not to fail to ask for every kind of relief possible to be obtained, and in this we think he has succeeded. Turning to the main features of the bill, we hardly think it can be doubted that complainant has shown an abundant equity. The trustees have created so many complications that the rights of the various parties can only be worked out through a court of equity. It is undoubtedly true that a junior mortgagee in a valid mortgage is entitled in equity to the balance remaining in the hands of the trustee after sale under a prior mortgage; but because this is true it does not relieve him from paying into the hands of the first trustee the full amount of his bid, should he

become the purchaser at the sale under the first mortgage. The junior mortgagee, being purchaser, cannot assume to adjudicate the validity of his own claim, as well as the amount thereof, and compel the trustee making the sale to accept a less amount than the bid for the property. It is the duty of the first trustee to collect the entire amount of the bid, by whomsoever made, and after satisfying his own mortgage to pay over the surplus to the party entitled to same; but the trustee has a right to protect himself from liability by compelling a settlement as between the parties claiming the surplus as to which is entitled to same, and if he assumes to adjudicate this for himself, and pays the amount of the surplus to the wrong party, he would be liable therefor. All the complications that have occurred would have been avoided if the junior mortgagee had paid off the debt of the senior mortgagee. Since McPherson failed to pay the full amount of his bid, there was no sale to him, and Davis rightfully refused to make him a deed to the property.

The facts shown by the bill make a second sale of the property by Davis, whereat Lowenberg became the purchaser, also an invalid sale. In the first place, Lowenberg was notified of all the facts; and, in the second place, it is shown that the sale was made late in the evening, after all bidders had dispersed. Both these things would invalidate Lowenberg's title. The mortgagors had rights to be protected, as well as the mortgagees; and one of those rights was that the sale should take place under such circumstances as gave all bidders a fair chance to be present and bid on the property, so that the best value might be obtained therefor. The rights of the mortgagors were disregarded by the second sale, as were also the rights of the junior mortgagee. Under the facts of this case a second sale by the first mortgagee could only take place after a readvertisement. It may not be true that in every case there must be a new advertisement in order to have a resale; but it is certain that in every case the resale must be immediate and before dispersement of bidders.

The sale under the junior mortgage by S. L. Dodd cannot be

sustained under the facts of this case, and the deed conveyed no title. In the first place McPherson, the purchaser, knew and caused all the trouble. The amount paid was grossly inadequate to the value, and the bill shows that the sale did not take place as advertised. The mortgagors had the right to obtain the greatest possible amount for the property to the end that as much of the debt of this second mortgage might be absorbed by the surplus as possible. This whole transaction was a nullity, and the various deeds constitute a cloud on the title, which should be canceled by the court.

After a consideration of the whole case made by the bill, we conclude that, after decreeing a cancellation of the deeds in question, the court should appoint a commissioner to ascertain the amounts due on both deeds in trust, and order the property to be sold to satisfy same, applying the proceeds of sale in the order of priority of the mortgages, paying the surplus, if any, to mortgagors. If the facts shall show that Lowenberg has paid in the $1,000, to the trustee, which sum was bid at the second sale of the property by Davis, whereat he became the purchaser, and that Davis has applied so much thereof as was necessary to the discharge of the first mortgage, then Lowenberg shall be subrogated in all respects to the right of the first mortgagee in the sum realized by the sale of the property as above ordered, to the extent of the claim. All surplus then remaining shall then be first applied to second mortgage debt, and, if then there be a surplus, it shall be paid to the mortgagors. The court should further require an accounting from Davis of all money that may have been received by him from Lowenberg, and should require repayment to Lowenberg of all that may remain in his hands of the purchase money paid by Lowenberg for the property. The whole cost of enforcing the rights of the parties in the chancery court should be taxed against McPherson, complainant, since his own acts caused all the difficulties. This, of course, does not include the cost of this appeal in this court.

*Reversed and remanded.*